UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RYAN N. KAMFOLT,

                        Petitioner,

            v.

J. LIZARRAGA,

                        Respondent.

Case No.  17-cv-00970-HSG

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS;
DENYING CERTIFICATE OF
APPEALABILITY**

        Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 by petitioner Ryan N. Kamfolt, challenging the validity of a judgment obtained

against him in state court.  Respondent has filed an answer to the petition, Dkt. No. 14

("Answer"), and Petitioner has filed a traverse, Dkt. No. 16.  For the reasons set forth below, the

petition is denied.

## I.  PROCEDURAL HISTORY

        On July 17, 2014, a Santa Clara County jury convicted Petitioner of residential burglary

with intent to commit theft and rape, and found true an allegation that a person not an accomplice

was present in the residence during the commission of the burglary.  Clerk's Transcript ("CT") at

162–63.[1]  The trial court found true the allegations that Petitioner had previously been convicted

of a serious or violent felony and had served a prior prison term.  CT 164–67.  On October 13,

2014, the trial court sentenced Petitioner to thirteen years in prison.  CT 296–97.

        On November 20, 2014, Petitioner appealed his conviction.  Answer, Ex. 7.  On December

15, 2014, Petitioner filed a habeas petition with the state appellate court which raised his speedy

---

[1] The Clerk's Transcript has been filed as Exhibit 1 to the Answer and is located at Dkt. No. 15-1.

trial claim for the first time. Answer, Ex. 8; Dkt. No. 16 at 2. On July 22, 2015, the state

appellate court issued an order stating that it would consider the habeas petition with the appeal.

Answer, Ex. 8. On September 30, 2016, the California Court of Appeal affirmed the conviction in

*People v. Kamfolt*, No. H041642, 2016 WL 5539878 (Cal. Ct. App. Sept. 30, 2016), and

summarily denied the habeas petition in a separate order. *Kamfolt*, 2016 WL 5539878 and

Answer, Ex. 8. On November 10, 2016, Petitioner filed a petition for review in the California

Supreme Court, seeking review of the state appellate court's denial of his appeal. That same day,

he filed his state habeas petition in the California Supreme Court. Answer, Exs. 7, 9, and 11. This

habeas petition solely raised a speedy trial claim. Answer, Ex. 11. On December 14, 2016, the

California Supreme Court summarily denied review of the appellate court decision. Answer, Ex.

10. On December 21, 2016, the California Supreme Court denied the habeas petition with

citations to *In re Dixon*, 41 Cal.2d 756, 759 (1953) and *People v. Duvall*, 9 Cal. 4th 464, 474

(1995). Answer, Ex. 12.

On February 24, 2017, Petitioner filed the instant federal habeas petition. Dkt. No. 1.

## II. STATEMENT OF FACTS

The following factual background is taken from the September 30, 2016 opinion of the

California Court of Appeal:[2]

### II. BACKGROUND

#### A. Charged Offense
On March 4, 2013, Kathleen Bracamonte lived in a single-family residence on Southbrook
Drive in San Jose with her husband, two adult daughters, and grandson. Bracamonte's
husband was gone that night, and Bracamonte had spent the day doing spring cleaning inside
her house. When Bracamonte went to bed at 11:30 p.m., her bedroom window screen was
intact, as were the screens on the kitchen windows, which were closed. Motion sensor lights
outside the house had been working as of a few days before.

Bracamonte fell asleep with the television on, so there was some light in her bedroom. At
some point during the night, she was woken up by a scratching sound on her bedroom
window screen. She assumed it was her cat, and she fell back asleep. However, she was
awakened again by a sound in her room. She saw defendant, who she did not know, standing

---

[2] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*,
853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds
that it can reasonably conclude that the state court's summary of facts is supported by the record
and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366
F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

near her head. Bracamonte said, "What?" Defendant left the bedroom. He did not say anything and did not try to touch Bracamonte.

Bracamonte followed defendant out of her bedroom and watched him go down the hall, through the dining room, and out the patio doors. Bracamonte yelled to defendant, telling him to keep running and that she was calling the police. She watched defendant leave her yard through the gate. Bracamonte then called the police.

After defendant left, Bracamonte noticed that her kitchen window had been opened and that the screens had been taken off windows in her kitchen and bedroom. In front of the open kitchen window, a bottle of wood floor cleaner had been knocked into the kitchen sink. Bracamonte's daughter, who had not been home that night, subsequently discovered that two pairs of underwear were missing from the dresser in her bedroom. However, $700 cash was not taken from the drawer, although it appeared to have been moved.

At Bracamonte's residence, officers discovered that the motion sensor lights had been unscrewed. When tightened, the motion sensor lights worked. An officer noticed a smell while processing the scene, and he discovered some feces along the fence line. The officer also found defendant's fingerprints on a set of windows just inside the gate.

Officers set up a perimeter around Bracamonte's neighborhood. An officer positioned at the intersection of Southview Drive and Tennant Avenue noticed defendant exit a side gate of a residence, and he noticed that defendant's clothing matched the description given by Bracamonte. The officer handcuffed defendant and searched him. Defendant had an odor of alcohol on his breath, but "no real strong indicators of being under the influence." Defendant wore a GPS device on his ankle, and he had two pairs of women's underwear in his pants pockets. Bracamonte identified defendant at a show-up.

Defendant's blood was drawn about two and a half hours after his arrest. His blood alcohol content was 0.08 percent. Three hours earlier, defendant's blood alcohol level would have been about 0.134 percent. Defendant's clothing was collected after his arrest. Defendant's underwear contained fresh feces.

Hernando Cardenas lived at the residence on Tennant Avenue where defendant had been taken into custody. Cardenas had known defendant since junior high school, and defendant had been to Cardenas's home in their "high school days." Cardenas had not seen defendant on the night of March 4.

Defendant's mother's residence was located on Southwind Drive, about a quarter of a mile from Bracamonte's house. Some of defendant's belongings were at his mother's residence. Defendant's Dodge Intrepid was located near Bracamonte's residence. Defendant kept some of his belongings at his mother's residence, and he charged his GPS device there, but he would sleep in his car.

Data from defendant's GPS device indicated that defendant had been at Bracamonte's residence from 2:56 a.m. until 3:15 a.m. and that he had been at Cardenas's residence from 3:27 a.m. until 3:54 a.m. [FN 2]

> FN 2: In his briefing on appeal, defendant repeatedly asserts that the evidence showed he was inside Bracamonte's house for 20 minutes, citing to the evidence from his GPS device. However, the evidence introduced at trial was that the GPS records showed that defendant was "at" the Bracamonte residence for about 20 minutes. The evidence does not establish that defendant was *inside* the house for that time period.

### B. Prior Offenses

**1. 2007 Burglary**

On August 31, 2007, Marilenis Olivera Lee was living in Campbell. While sleeping in her bedroom that night, she was woken by a noise. She looked out her window and saw defendant grabbing onto the window frame, about to enter her bedroom. Lee screamed, and defendant jumped back outside and ran away. Lee and a neighbor followed defendant, who got into a car. Lee wrote down the license plate number and gave it to the police. That night, an officer contacted defendant at his home, which was also in Campbell, less than two miles from Lee's residence. Defendant had an odor of alcohol on his breath, and a blood draw later revealed his blood alcohol content to be 0.04 percent. Defendant subsequently pleaded no contest to a charge of first degree burglary with intent to commit theft and felony assault with the intent to commit rape.

**2. 2003 Prowling**

On December 15, 2003, Anthony La Mont Smith was living on Silver Leaf Road near Southbrook Drive and Tennant Avenue in San Jose with his wife, mother-in-law, and teenaged daughter, who knew defendant from school. At about 10:00 p.m. that night, Smith's wife heard an unusual noise, so Smith went outside to look and to take out the garbage. As Smith walked down the side of his house, he noticed the silhouette of someone in his yard, which was enclosed by a fence almost seven feet high and a locked gate. He asked, "Who's in my yard?" Defendant, who was standing near his daughter's bedroom window, responded, "It's me, Mr. Smith." Smith had seen defendant walking a dog in the neighborhood about a week earlier. Defendant told Smith he was looking for his cat, but Smith did not see a cat in the yard. Smith asked why defendant had not just knocked on the front door. Smith later noticed that the motion detector light in his backyard had not turned on. He discovered that the light was loose. When he tightened the light, it worked. [FN 3]

> FN 3: According to the prosecutor's motion in limine, defendant pleaded guilty or no contest to prowling (§ 647, subd. (h)) and trespass with intent to injure the property (former § 602, subd. (j)), but the jury was not told about the convictions.

*C. Defense Case*

Defendant did not testify or present evidence. His trial counsel argued that defendant lacked the specific intent to commit rape or theft because defendant had been intoxicated. Defendant's trial counsel argued that defendant's behavior had been consistent with intoxication rather than an intent to commit theft or burglary, pointing out that defendant had defecated in Bracamonte's yard, climbed into the house with his GPS device on, taken underwear but not the $700 in the drawer or any other items, gone into Bracamonte's bedroom without touching her or speaking to her, and fled by foot, leaving his car parked outside Bracamonte's house.

*D. Verdicts and Sentencing*

The jury convicted defendant of first degree burglary (§§ 459/460, subd. (a)) and found true an allegation that a person was present during the burglary (§ 667.5, subd. (c)(21)). The trial court found true allegations that defendant had a prior conviction that qualified as a strike (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)), and an allegation that defendant had served a prior prison term (§ 667.5, subd. (b)).

At the sentencing hearing, the trial court imposed the four-year midterm for the burglary and doubled it to eight years based on the strike allegation. The trial court imposed a consecutive five-year term for the prior serious felony allegation, but it stayed the term for the prior prison term allegation. Defendant's aggregate prison term was 13 years.

*Kamfolt*, 2016 WL 5539878, at *1–*3.

//

//

4

**III. DISCUSSION**

**A.     Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).  A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Id.* at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). With respect to Petitioner's speedy trial claim, which was raised only in his habeas petitions, the last reasoned decision of the state court was the California Supreme Court's denial of the state habeas petition. With respect to Petitioner's due process claim, the California Supreme Court summarily denied Petitioner's petition for review. The opinion of the California Court of Appeal was the last reasoned state court decision that addressed the due process claim. Accordingly, in reviewing the speedy trial claim, this Court reviews the California Supreme Court's denial; and in reviewing the due process claim, this Court reviews the California Court of Appeal's opinion. *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[3]

**B.      Petitioner's Claims**

Petitioner claims that (1) his right to a speedy trial was violated; and (2) the admission of prior acts violated his right to due process. *See* Pet. and Dkt. No. 6 at 2 (Order to Show Cause).

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)). The look through rule is applicable here as the Ninth Circuit has held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

### 1. Speedy Trial Claim

Petitioner argues that the sixteen-month delay between when he was arrested and when he went to trial violated his Sixth Amendment right to a speedy trial. The California Supreme Court denied this claim as follows: "The petition for a writ of habeas corpus is denied. (*See in re Dixon* (1963) 41 Cal. 2d 756, 759; *People v. Duvall* (1959) 9 Cal. 4th 464, 474.)." *See* Dkt. No. 15-3 at 139. Respondent argues that federal review of this claim is barred because this claim is procedurally defaulted, and that, in the alternative, the state court reasonably concluded that no speedy trial violation occurred. Dkt. No. 14-1 at 14–17.

### a. Procedural Default — Adequate and Independent State Ground

Respondent argues that the California Supreme Court's citation to *In re Dixon*, 41 Cal.2d 756, 759 (1953), renders the speedy trial claim procedurally defaulted. In *Dixon*, the California Supreme Court held that, in order to bring a claim in a state habeas corpus action, a petitioner must first, if possible, have pursued the claims on direct appeal from his or her conviction unless the claim falls within certain exceptions.[4] *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). Petitioner argues that his procedural default should be excused because he was incorrectly advised by his appellate attorney that the speedy trial claim could not be raised on appeal and could only be raised in a habeas petition. Dkt. No. 16 at 2.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.

---

[4] None of the exceptions to the *Dixon* rule are applicable to the instant petition. The exceptions are: (1) fundamental constitutional error; (2) lack of jurisdiction over the petitioner; (3) the trial court acting in excess of its jurisdiction; or (4) an intervening change in the law. *See Park*, 202 F.3d at 1152 (listing the exceptions to the *Dixon* rule as set forth by the California Supreme Court in *In re Harris*, 5 Cal. 4th 813, 828 n.7 (1993)).

1994). "State rules count as 'adequate' if they are 'firmly established and regularly followed.'" *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)).

Here, the California Supreme Court summarily denied the speedy trial claim with citations to *Dixon* and *Duvall*, 9 Cal. 4th 464, 474 (Cal. 1995). The *Dixon* rule is both an adequate and independent state procedural rule and, by itself, bars federal habeas review. *Johnson*, 136 S. Ct. at 1804–05. But it is unclear whether *Duvall* is an adequate and independent state procedural rule.[5] *See Bodnar v. Davis*, No. EDCV 12-657-DSF OP, 2014 WL 794575, at *20 (C.D. Cal. Feb. 26, 2014) (pre-*Johnson* case expressing doubt as to whether *Dixon*, *Miller*, and *Duvall* are adequate and independent procedural bars); *Peyton v. Lopez*, 2012 WL 1203484, *7–8 (C.D. Cal. Feb. 22, 2012) (citing *Reddick v. Felker*, No. CIVS-07-1148JAMCHSP, 2009 WL 3165371, at *4 n.4 (E.D. Cal. Sept. 29, 2009)) (finding no procedural default when state supreme court's denial cited three separate cases, including *Duvall*, because "each of the three cited cases [needed to] provide[ ] an independent and adequate basis under state law for the decision").

The question, therefore, is whether a state court's denial of a single claim on multiple procedural grounds precludes federal habeas review where only one of the grounds is a confirmed adequate and independent state procedural rule. Neither the Supreme Court nor the Ninth Circuit has directly addressed this issue. However, both the Supreme Court and the Ninth Circuit have

---

[5] Although the Ninth Circuit has held that a citation to "*Duvall*, 886 P.2d at 1258" can constitute either a decision on the merits or a procedural bar, *Seeboth v. Allenby*, 789 F.3d 1099, 1103 (9th Cir. 2015), the pinpoint citation to *Duvall* here indicates that the California Supreme Court applied *Duvall* as a procedural bar in denying the state habeas petition. In *Seeboth*, the Ninth Circuit noted that the pinpoint citation "886 P.2d at 1258" cites to a page that discusses both procedural and substantive requirements for habeas petitioners, and that such a citation can indicate that the state court has denied the petition on the merits and/or on procedural grounds, depending on the context of the case. *Id.* Here, the California Supreme Court used a pinpoint citation to the California Reporter, "9 Cal. 4th at 474." The Pacific Reporter citation used by the Ninth Circuit overlaps with pages 474–75 in the California Reporter. Page 474 discusses the procedural requirement that a habeas petitioner must state with particularity the facts on which relief is sought, and must provide copies of reasonably available documentary evidence. *Duvall*, 9 Cal. 4th at 474. At the bottom of page 474 and continuing to on to page 475, the *Duvall* court discusses the substantive requirement that the habeas petitioner's allegations, if assumed to be true, must state a case for relief. *Duvall*, 9 Cal. 4th at 474–75. Accordingly, a citation to "*Duvall*, 9 Cal. 4th at 474" is a dismissal on procedural grounds, whereas a citation to "*Duvall*, 9 Cal. 4th at 474–75" or to "*Duvall*, 9 Cal. 4th at 475" would be a denial of the petition on the merits.

clearly held that, pursuant to the principles of finality, federalism and comity, where a state court has dismissed a claim pursuant to an adequate and independent state procedural rule and on alternative grounds, the presence of the adequate and independent state procedural rule is sufficient to bar federal review of that claim notwithstanding the presence of the alternative ground. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim."). Although the state supreme court also denied the state habeas petition on an alternative ground, this Court must still honor the adequate and independent state ground doctrine set forth in *Dixon*. Accordingly, the Court's review of Petitioner's speedy trial claim is barred unless Plaintiff can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### b.     Cause and Prejudice

Petitioner argues that the *Dixon* bar should not bar federal habeas review of his speedy trial claim for the following reasons. First, Petitioner argues that the *Dixon* bar was incorrectly applied in that his speedy trial claim was decided along with his appeal issues when Judge Rushing consolidated the habeas petition and original appeal. Second, he argues that his failure to raise the speedy trial claim on appeal was due to incorrect advice provided by his appellate counsel who misinformed him that the speedy trial claim could not be raised on appeal. Dkt. No. 16 at 2.

Petitioner fails to satisfy the cause standard.

While Petitioner is correct that "an erroneously applied procedural rule does not bar federal habeas review," *Sivak v. Hardison*, 658 F.3d 898, 907 (9th Cir. 2011), the record demonstrates that *Dixon* was correctly applied. The record clearly shows that Petitioner raised his speedy trial claim in a habeas petition rather than in the appeal that he filed a month earlier. *See* Answer, Ex. 4 (appeal only raised due process claim regarding admission of prior acts) and Ex. 9 (habeas petition

only raised speedy trial claim).   In emphasizing that he originally sought to include the speedy trial claim in his appeal and that the state appellate court considered his speedy trial claim along with his appellate claim, Petitioner appears to be arguing that he intended to comply, and effectively did comply, with the spirit of the *Dixon* rule.  The *Dixon* rule does not turn on a petitioner's intention or how the claims were addressed in the state court.  The record does not support a finding that the *Dixon* rule was erroneously applied.

Nor is Petitioner's allegation of attorney incompetence sufficient to establish cause.  The cause standard requires the petitioner to show that "'some objective factor *external* to the defense impeded counsel's efforts'" to construct or raise the claim."  *McClesky v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (emphasis added).  While a petitioner may show cause by establishing constitutionally ineffective assistance of counsel, the claim of ineffective assistance of counsel must have been presented as an independent claim to the state courts.  *See Carrier*, 477 U.S. at 489.  Here, Petitioner did not raise any ineffective assistance of counsel claim in the state courts.  *See* Answer, Ex. 4 (appeal only raised due process claim regarding admission of prior acts) and Ex. 9 (habeas petition only raised speedy trial claim).

c.    Miscarriage of Justice / Actual Innocence

If a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of the procedurally defaulted claim if the failure to hear the claim would constitute a "miscarriage of justice."  *See McQuiggin v. Perkins*, 569 U.S. 383, 391–92 (2013).  The Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray*, 477 U.S. at 496).  Actual innocence is innocence of the charge for which the petitioner is incarcerated, as opposed to legal innocence as a result of legal error.  *Schlup*, 513 U.S. at 321.  A petitioner must present evidence that creates a colorable claim of actual innocence.  It is not enough that the evidence show the existence of reasonable doubt.  *Id.* at 329.  The petitioner must establish that, "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327–28).

Petitioner has not established actual innocence. He argues that the denial of his right to a speedy trial deprived him of a material witness who would have established his innocence. Specifically, Petitioner argues that his parole officer would have testified that, in the time immediately preceding the crime, Petitioner regularly engaged in the same behavior at his mother's home, thereby proving that, at the time of the crime, Petitioner believed that he was at his mother's home and did not have the requisite mental state. This evidence is not direct proof of innocence. In addition, Petitioner's crime differed in a significant aspect from his pattern of behavior at his mother's home. According to Petitioner, when he visited his mother, he visited at night, regularly used the toilet and shower, changed his clothing, spoke with his mother, and charged his GPS monitor. Dkt. No. 1 at 10. In contrast, during the crime, Petitioner unscrewed the motion sensor light, which a jury could reasonably construe as evidence that Petitioner possessed the requisite intent. Moreover, Petitioner presented direct evidence in support of his argument that he lacked the requisite intent, contending that he was intoxicated at the time of the crime, that he left his ankle bracelet on while committing the crime, that he stayed in the home for a long period of time, and that he took nothing but the underwear. Despite being presented with this evidence that bore directly on his intent at the time of the crime, the jury found Petitioner guilty. Considering the totality of the record, the Court finds that the evidence Petitioner claims that he lost by virtue of the alleged speedy trial violation would not have made it more likely than not that no reasonable juror would have convicted him.

Because the state court dismissed Petitioner's speedy trial claim pursuant to an adequate and independent state ground that was correctly applied and because Petitioner has not established either cause for the default or actual innocence, federal habeas review of this claim is barred. *Coleman*, 501 U.S. at 729–30. Petitioner is therefore not entitled to habeas relief on his speedy trial claim.

### 2. Due Process Claim

Petitioner argues that the admission of prior acts, specifically, his prior burglary offense and his prior prowling offense, violated his right to due process. The state court rejected Petitioner's claim as follows:

Defendant contends the trial court abused its discretion by allowing the prosecution to introduce evidence of his prior burglary and prowling offenses.

### A. Proceedings Below

The prosecution filed a motion in limine seeking to introduce evidence of defendant's prior offenses to show his intent in committing the charged offense. The prosecution argued that the prior offenses were admissible under Evidence Code section 1101, subdivision (b) and argued that they were not unduly prejudicial because they were "very similar" to the charged offense and resulted in guilty or no contest pleas.

Defendant filed written opposition, arguing that evidence of the prior offenses was not admissible pursuant to Evidence Code section 1101, subdivision (b) because the prior burglary and prowling offenses were "significantly dissimilar" to the charged offense. Defendant also argued that the trial court should exclude evidence of the prior offenses under Evidence Code section 352.

During the hearing on motions in limine, defendant's trial counsel reiterated her position that the prior offenses were too dissimilar to be admissible to show intent. She noted that during the prior burglary, defendant had entered a bedroom, spoken with the victim, and driven away in a vehicle, whereas during the charged offense, defendant had entered the house through the kitchen or living room and had not fled the neighborhood afterwards, even though his vehicle was parked outside.

The prosecutor argued that the offenses were similar. She pointed out that in the instant case, defendant had scratched at a bedroom window before entering the house, and that defendant was found near his home all three times. The prosecutor also pointed out that in the instant case and in the 2003 prowling case, a motion sensor light had been found unscrewed.

The trial court found that both prior offenses were admissible. The trial court instructed the jury that the prior offense evidence could only be considered only for the limited purpose of determining defendant's intent.

### B. Analysis

"'"Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition. ..."'" (*People v. Thomas* (2011) 52 Cal.4th 336, 354 (*Thomas*).) Specifically, "'[s]ubdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of [Evidence Code] section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' [Citation.] 'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.]'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).) "To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371.) "The least degree of similarity is required to prove intent or mental state." (*Thomas, supra,* 52 Cal.4th at p. 355.)

"In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)

""""There is an additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citation.]"""" (*Thomas, supra,* 52 Cal.4th at p. 354; see Evid. Code, § 352.) "'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' [Citation.] "'We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." [Citation.]' [Citation.]" (*Fuiava, supra,* 53 Cal.4th at pp. 667-668, fn. omitted.)

As this court has noted, "Numerous decisions have upheld the admission of prior burglaries on a similar rationale when, as here, a defendant contests the sufficiency of the prosecution evidence to establish the required intent. [Citations.]" (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1393-1394 (*Rocha*).) In *Rocha*, both the charged burglary and prior burglary "involved defendant's nonconsensual entry into residential garages belonging to complete strangers, the doors of which garages had been left open." (*Id.* at p. 1395.) In the prior incident, the defendant had been in a vehicle and had taken stereo components but not tools that were in the garage, and he had been cooperative when contacted by the police. In the charged incident, the defendant had been on foot, had taken tools, and had been uncooperative. This court found that "[n]one of these distinctions defeats the extraordinary circumstance of having twice entered strangers' garages and carried away property belonging to them." (*Id.* at p. 1396.)

Defendant asserts that the distinctions between the instant case and the two prior offenses were sufficiently dissimilar as to render the prior offenses irrelevant to show his intent. Defendant points out that he did not speak with Bracamonte, whereas he spoke to Smith during the 2003 prowling incident, and that he entered Bracamonte's kitchen window, whereas he entered a bedroom window during the 2007 burglary. Defendant contends the dissimilarities between the current and prior offenses were comparable to the dissimilarities in *People v. Thompson* (1980) 27 Cal.3d 303 (*Thompson*).

In *Thompson*, the court held that evidence of a subsequent robbery had been improperly admitted to show the defendant's intent to steal while committing a special circumstance murder and attempted murder. In the charged offense, the defendant had entered the victims' house, pointed a gun at them, and said he wanted money, but he did not take any money or valuables. He took one victim's car keys, shot both victims, and left without taking the car. (*Thompson, supra,* 27 Cal.3d at p. 311.) In the robbery, the defendant had pointed a gun at restaurant employee and demanded money from the restaurant. When the victim said he could not access the restaurant's money, the defendant instructed the victim to give up his wallet and car keys. (*Id.* at p. 312.) He did not shoot the victim, but he took the victim's wallet and drove the victim's car away, abandoning it down the hill from the restaurant. The California Supreme Court held that the circumstances of the two offenses were insufficiently similar to show that the defendant intended to steal money, car keys, or automobiles. (*Id.* at pp. 320-321.)

Defendant relies on *Thompson* in asserting that the prior offenses could not show his intent was commit rape[6] because he did not touch Bracamonte, which shows that he declined to sexually assault her. He analogizes to the *Thompson* defendant's decision not to take money from the shooting victims. However, as the Attorney General points out, defendant also did not touch the victim of the 2007 burglary. In both instances, defendant entered the victims' bedrooms but fled when they woke up and yelled at him. The evidence supported an inference that in both of those cases, as well as during the 2003 prowling incident, defendant intended to sexually assault the victims but was interrupted—not that he declined to do so.

---

[6] Typographic error in original.

Defendant contrasts the instant case with *People v. Nible* (1988) 200 Cal.App.3d 838 (*Nible*), in which the defendant was convicted of first degree burglary after he started to enter the victim's bedroom window by pulling back part of the window screen, but ran away after being confronted by the victim. In *Nible*, the prosecution sought to introduce two prior offenses to show the defendant's intent. (*Id.* at p. 846.) One of the prior offenses was an assault with intent to commit rape, to which the defendant had pleaded guilty. In that case, the defendant had entered the victim's bedroom window while she was sleeping, pulled down the victim's underwear and placed his hand on her vagina, but run away after she awakened and scared him. (*Id.* at pp. 846-847.) In a second case, the defendant had removed a woman's bedroom window screen in the middle of the night, reached through the window and touched her shoulder, and run away only after her daughter entered the room in response to her screams. (*Id.* at p. 847.)

The *Nible* court explained that the relevance of the prior offenses did not depend on them sharing any "distinctiveness." (*Nible, supra,* 200 Cal.App.3d at p. 849.) It was sufficient that the prior offenses shared "substantially similar characteristics" to the current offense, particularly the "same preparatory acts," which "warrant[ed] the inference defendant's intent was the same on each of the three occasions." (*Id.* at p. 850.) The court rejected the defendant's claim that the evidence of the prior offenses was "too prejudicial because it involved sex offenses." (*Ibid.*)

The instant case is analogous to both *Rocha* and *Nible*. Similar to those cases, defendant used the same unique means of entry—removal of a window—to commit the current and 2007 burglary, and the circumstances suggested he intended to enter through a window during the 2003 prowling. The evidence also strongly suggested that defendant had unscrewed the motion detector lights in both the current burglary and the 2003 prowling. The fact that the three incidents shared the "same preparatory acts" supported an inference that defendant had the same intent on each of those occasions. (*See Nible, supra,* 200 Cal.App.3d at p. 850.) Other circumstances were also similar. Defendant lived in his car in the same neighborhood as Bracamonte, and he apparently lived near the victims of the prior offenses. Also, at the time of his arrest for the 2007 burglary, defendant appeared to have been drinking alcohol, just as in the current offense.

Defendant points out that during the current incident, he defecated on a lawn and had feces in his underwear, and that he was wearing a GPS device. He asserts these facts make it likely he entered Bracamonte's house while so intoxicated as to lack the intent to steal or commit rape. These arguments go to the weight of the evidence, not the admissibility of the prior offenses. Moreover, in determining the admissibility of prior offenses to show intent, "[t]he question ... is not the number of points of similarity but their logical relevance to establish the mental element of the charged offense." (*Rocha, supra,* 221 Cal.App.4th at p. 1394.) Here, the shared facts—defendant's nighttime approaches to windows at the victims' homes, his attempts to enter windows at two of the houses, his unscrewing of motion detector lights, and his flight or false statements upon being discovered—had the most logical relevance to his intent in each instance. (*See People v. Jordan* (1962) 204 Cal.App.2d 782, 786-787 [jury may infer intent to commit theft based on entry through a window and flight upon being discovered].)

We conclude that the prior offenses were "sufficiently similar to support the inference that the defendant ""probably harbor[ed] the same intent in each instance,"""" such that the trial court did not abuse its discretion by finding that the evidence was admissible pursuant to Evidence Code section 1101, subdivision (b). (*See Ewoldt, supra,* 7 Cal.4th at p. 402; *Fuiava, supra,* 53 Cal.4th at pp. 667-668.) We next consider whether the probative value of the uncharged offense evidence was """"outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citation.]""""" (*Thomas, supra,* 52 Cal.4th at p. 354; *see* Evid. Code, § 352.)

Defendant contends that "an admission to burglary with intent to rape is extremely inflammatory" and that the 2007 burglary victim's testimony was likely to have aroused an emotional bias against defendant. As the Attorney General notes, the *Nible* court rejected a claim that evidence of prior offenses was "too prejudicial because it involved sex offenses." (*Nible, supra,* 200 Cal.App.3d at p. 850.) Contrary to defendant's claim, the testimony regarding the 2007 burglary was not more inflammatory that the evidence regarding the charged offense. In the 2007 incident, defendant ran away before actually entering the victim's bedroom, whereas in the charged offense, he was standing next to Bracamonte in her bedroom. Further, defendant did not commit a sex offense during the prior burglary; he simply admitted, as part of his plea, that he had that intent. The fact that defendant was convicted of the 2007 burglary lessened the risk that the jury would want to punish defendant for that crime. Additionally, "the trial court took appropriate measures to reduce the risk of undue prejudice," by giving the jury a limiting instruction. (*Fuiava, supra,* 53 Cal.4th at p. 667.) On this record, where the prior offenses were highly probative on the central issue of defendant's intent, the trial court did not abuse its discretion by determining that the probative value of the prior offenses was not outweighed by a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.

*Kamfolt*, 2016 WL 1039461, at \*4–\*6.

### a.  Legal Standard

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  The admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the evidence.  *See Jammal*, 926 F.2d at 920.  The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)); *see, e.g., Zapien v. Martel*, 849 F.3d 787, 794 (9th Cir. 2016) (because there is no Supreme Court case establishing fundamental unfairness of admitting multiple hearsay testimony, *Holley* bars such claim on federal habeas review).

//

### b. Analysis

Petitioner argues that admission of the prior acts evidence — the 2008 conviction by plea to burglary with intent to commit rape (which occurred in 2007) and the 2003 prowling incident — violated his federal due process rights because it was so unduly prejudicial and inflammatory that it rendered his trial fundamentally unfair.[7]  Dkt. No. 1 at 5, 7, and 16; and Dkt. No. 16 at 1.  Specifically, Petitioner argues that without admission of the prior acts, the jury would not have found that his mere presence in Bracamonte's house and the presence of two pairs of women's underwear in his pocket was sufficient to prove intent to commit theft or rape.  Dkt. No. 1 at 7; Dkt. No. 16 at 1–2.

After carefully reviewing the record, the Court finds that the state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and did not involve an unreasonable application of the facts presented at the State court proceeding.

Although the state court opinion only referenced state law in rejecting this claim, the decision is entitled to deference under 28 U.S.C. § 2254(d) because the federal due process claim was presented to that court and presumably silently rejected.  *Johnson v. Williams*, 568 U.S. 289, 300–01 (2013) (order that discusses state law claim but not federal claim rebuttably presumed to be a rejection on the merits and therefore subject to § 2254(d)).  The Court follows the Supreme Court's direction and "determine[s] what arguments or theories . . . could have supported" the state court's rejection of the federal claim, and then gives deference to those arguments or theories under AEDPA.  *Harrington*, 562 U.S. at 102.

The state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[7] To the extent that Petitioner is arguing that the prior bad acts were admitted in violation of section 352 of the California Evidence Code, this fails to state a claim for federal habeas relief.  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  *Jammal*, 926 F.2d. at 919.  It is possible to have a fair trial even when state standards are violated.  *Id.*  On federal habeas review, the question is whether the admission of the prior bad acts rendered the proceeding fundamentally unfair, and not whether state law was violated.  *Id.*

of the United States. Assuming arguendo that the prior acts evidence was prejudicial, this does not warrant federal habeas relief. As discussed above, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.[8] Moreover, intent is a permissible inference that the jury may draw from the evidence of prior acts. *See Houston v. Roe*, 177 F.3d 901, 910 n.6 (9th Cir.1999).

Nor was the state court's denial of this claim based on an unreasonable determination of the facts in light of the evidence presented in the trial court. The jury could permissibly draw the inference that Petitioner had the requisite intent to commit theft or rape based on evidence that he had carried out similar preparatory acts (making nighttime approaches to windows, attempting to enter windows, and unscrewing motion detector lights) in committing other burglaries, including one in which he admitted the intent to commit theft and rape. The other acts evidence tended to negate Petitioner's suggestion that his actions were a result of mistake or accident. The trial court instructed the jury that the prior acts evidence could only be considered for the limited purpose of determining intent. Accordingly, the Court finds that the admission of the prior acts evidence did not render the trial unfair, and thus did not violate due process. Petitioner is not entitled to habeas relief on this claim.

//

//

//

---

[8] To the extent that Petitioner is arguing that the prior bad acts evidence constituted propensity evidence and therefore violated due process, this argument also does not warrant federal habeas relief. The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006) (finding that state supreme court decision that admission of propensity evidence did not violate due process was not objectively unreasonable given that *Estelle* expressly left this issue an open question); *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming *Alberni*); *see, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law).

**C.     Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, *id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated:  2/25/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge